**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| GENOA JACKSON, | ) | Case No.  06-10814 (BLS) |
| | ) | |
| Debtor. | ) | Docket Reference No. 42 |

**OPINION**[1]

Before the Court is the Debtor's objection to the claim of Arlou, LLC ("Arlou").  For the reasons set forth below, the Debtor's objection will be sustained in part and denied in part, and Arlou will be allowed a general unsecured claim in the amount of $611.28.

**BACKGROUND**

On September 18, 2002, the debtor (hereinafter, the "Debtor" or "Ms. Jackson") entered into a one-year lease with Arlou[2] to rent a home located at 15 North Street, New Castle, Delaware (the "Property").  Debtor fell behind in the rental payments and Arlou sued Ms. Jackson in Justice of the Peace Court ("JP Court") in Delaware in April 2003.  After a trial held in May 2003, Arlou was awarded unpaid rent and court costs in the aggregate amount of

---

[1]   This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

[2]   In point of fact, Ms. Jackson entered into the lease with Arlou's predecessor-in-interest, TIXE Corp.  For the Court's purposes today, the distinction is not material.

1

$1,200.51[3] and legal right to possession of the Property by order of the JP Court dated May 13, 2003. (See J.P. Court No. 13, Civil Action No. J0304024913, at Docket No. 8). The JP Court's order also provided for per diem rent for the Property prospectively from the date of the judgment in the amount of $20 per day. Id.

The record reflects that at the conclusion of the trial, Ms. Jackson advised Arlou that she intended to move out of the Property promptly. Arlou took possession of the property and changed the locks on June 13, 2003.

Arlou again sued Ms. Jackson in the JP Court in 2005, seeking unpaid rent for the balance of the lease term (roughly three months) and for reimbursement for costs alleged to have been incurred in repairing damage to the Property. After a trial on Arlou's complaint, the JP Court entered an order dated May 16, 2006, denying in their entirety Arlou's claims for unpaid rent and damages. Arlou timely appealed that ruling, seeking trial de novo in the Delaware Court of Common Pleas, where the matter remains pending.

Debtor filed her Chapter 13 petition on August 3, 2006, and did not list Arlou as a creditor on her schedules. Arlou subsequently learned of the bankruptcy filing and filed a proof of claim in the amount of $4,267.53 for the monies it hoped to recover

---

[3] The record reflects, and the parties stipulated, that this judgment has been fully satisfied.

in the Court of Common Pleas action. Debtor initially objected to Arlou's claim on the grounds of lateness, but withdrew that objection after acknowledging that Arlou was not scheduled and did not receive notice of the bankruptcy case. Debtor now objects to Arlou's claim on the merits and contends that Arlou is not entitled to allowance of a claim either for post-abandonment rent or for reimbursement for damages to the Property.

The parties initially sought relief from the stay to proceed to liquidate the claim in the Court of Common Pleas action. As an alternative, this Court offered to schedule and hear the dispute in hopes of disposing of the matter promptly and economically. The parties agreed, and trial was held in this Court on April 2, 2008.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

The burden of proof for a party filing a claim objection in a bankruptcy case shifts between the parties. In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re United Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000). A claimant "must allege facts sufficient to support the claim." Allegheny, 954 F.2d

at 173. If claimant's averments in the filed claim meet this standard of sufficiency, the claim is considered to be "prima facie" valid. 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.") (emphasis added); Allegheny, 954 F.2d at 173. As previously stated by the Third Circuit, "a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." Allegheny, 954 F.2d at 173. This burden of moving forward then shifts to the objecting party "to produce evidence sufficient to negate the prima facie validity of the filed claim." Id. Thus, the objecting party must produce evidence equal in force to the prima facie case that would discredit at least one of the allegations that is essential to the claim's legal sufficiency. Id. at 173-74. In the event that the objecting party "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim," the burden of the objecting party then shifts back to the claimant. Id. at 174. The creditor's entitlement to payment on its claim must then be proven by a preponderance of the evidence. Id.

In the present case, Arlou's proof of claim easily satisfies the relatively low threshold of § 502(a). The Debtor has countered with testimony and evidence sufficient to negate the statutory presumption of validity. Accordingly, the burden now rests with

Arlou to establish, by a preponderance of the evidence, its entitlement to allowance and payment of its claim.

At trial, Arlou submitted an exhibit providing a breakdown of the various components of its claim and supported that demand with the testimony of its two principals, Arthur and Louis Glick. The Debtor testified in support of her objection to Arlou's claim. The Court will address, and allow or disallow, each category or component of Arlou's claim.

**A.    Rent Through the End of the Lease Term**

The largest chunk of Arlou's claim consists of $1,900 in rent alleged to be due under the lease for the period June 13, 2003, to September 18, 2003 (the end date of the original lease term). The Court will deny the request for rent.

The record reflects that on May 16, 2003, Arlou obtained a judgment from the JP Court awarding it (i) $1,200.51 in unpaid rent and court costs;[4] (ii) possession of the Property; and (iii) <u>per diem</u> rent going forward in the amount of $20 per day. The record also reflects that, on the day of entry of the above-described judgment, Debtor informed Arlou that she intended to vacate the Property. The record further reflects that Arlou took possession of the Property and changed the locks on June 13, 2003. It appears to the Court that the JP Court's judgment and order vitiates

---

[4]    As noted above, the parties stipulated that this judgment has been satisfied.

Arlou's right to collect rent through the end of the lease term. Arlou was granted the legal right to possession of the Property, and the right to assess $20 per day against Ms. Jackson until she quit the Property. There was no reason for the JP Court to order a per diem rent rate if Arlou still enjoyed the contractual right to collect the full balance of the lease rent. Accordingly, Arlou's request for $1,900 in unpaid rent is denied.

**B.  Other Charges**

Arlou has claimed a right to reimbursement for a variety of charges relating to the repair or rehabilitation of the Property. (See Creditor Exhibits 1 - 18 admitted at trial on February 2, 2008). The Court will address each request in turn.

1. Arlou seeks $85 for carpet cleaning. This request is denied, as the Court concludes that this is a normal expense Arlou would have incurred in re-letting the Property.

2. Arlou seeks $1,625 for patching and repainting walls, due to allegedly extraordinary damage caused by Debtor's children (crayons and markers on the wall). The record reflects Arlou was aware that the Debtor had small children when it let the Property to Debtor. Some of this damage is to be expected. The Court will allow a claim for $625 on account of extraordinary damage, and disallow the balance of $1,000.

3. Arlou seeks $380.71 for replacing shades and curtains. The parties' testimony conflicts as to whether the Property had curtains, and the Court finds that Arlou has not carried its burden of proof that there were curtains, and that they were damaged or destroyed by Debtor. The Court will allow a claim for $100 on account of damaged window shades and related hardware.

4. Arlou seeks $185 for cleaning up the yard, and the testimony reflects the yard was left in poor condition.

    The Court finds that at least a portion of this charge is a normal expense Arlou would incur in re-letting the Property. This request will be allowed in the amount of $85.

5. Arlou seeks $66.50 in connection with re-keying and changing the locks in the Property. Arlou testified that, in large measure, these are expenses Arlou would incur in transition from on tenant to another. The request is denied.

6. Arlou seeks $61.93 for reimbursement of utility bills for the period following June 13, 2003, up to and beyond the expiry of the lease term. This request is denied: the utility service was instituted by Arlou to facilitate work on the Property and should not be borne by the Debtor.

7. Arlou claims $177.00 for repairs to hatches leading to the crawlspace under the Property. Nothing in the record supports the allegation that Debtor damaged these hatches, and Arlou's request in this regard is denied.

8. Arlou seeks $85 for paint, and the Court will allow this charge.

9. Arlou seeks reimbursement for replacement parts and repair of damaged screen doors, and this amount will be allowed in the amount of $100.

10. Arlou seeks $16.28 relating to replacement of a broken shower head. This claim is allowed in full as the testimony reflects that this damage is beyond ordinary wear and tear.

11. Arlou claims $56.76 for lumber, hardware and miscellaneous parts. This request is denied, as the evidentiary record does not support a finding that these charges were to repair damage, beyond normal wear and tear, caused by the Debtor.

12. Arlou has requested $250 on account of Arthur Glick's time and effort in relation to the Property. The evidence adduced at trial supports the conclusion that Mr. Glick was required to put in more time that would be typical on account of the condition of the Property, but it is also clear that he would have expended at least some time and energy on the Property even in the absence

of extraordinary damage.[5]  Based on the record before the Court, Arlou's claim in this regard will be allowed in the amount of $200.

Based upon the foregoing, the Court will allow a general, unsecured claim in favor of Arlou in the amount of $1,211.28, less the $600 security deposit already retained and applied by Arlou.  That claim, in the amount of $611.28, will be paid pursuant to Debtor's confirmed Chapter 13 Plan, which presently contemplates payment in full to all unsecured creditors.  (See Docket Nos. 22 and 25 (Debtor's Modified Chapter 13 Plan and Order confirming same, respectively)).  If, as a result of this ruling, Debtor is obliged to amend her plan to address Arlou's claim, Debtor will file an amended plan and coordinate with the Chapter 13 Trustee regarding procedures and requirements for confirmation of such amended plan.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that Arlou's claim shall be allowed as a general unsecured claim in the amount of $611.28.

An appropriate Order follows.

BY THE COURT:

_____
Dated: April 9, 2008          BRENDAN LINEHAN SHANNON
                              UNITED STATES BANKRUPTCY JUDGE

---

[5]    Mr. Glick testified credibly that Arlou's success as a rental company is due, at least in part, to the quality and upkeep of its properties.